Good morning. Please be seated, everyone. Welcome to the Ninth Circuit. We've got a number of cases on calendar for argument this morning, but before I call the calendar, I want to just pause for a moment to have a special acknowledgement of our courtroom deputy, Bonnie Cades. Bonnie, will you stand up to be acknowledged by everyone? Bonnie is serving in her last calendar today, and she has been with the court for 24 plus years, if I've got my math right. And I just want to say, Bonnie, we appreciate you so much. Thank you for your two decades plus of professionalism and dedication. We wouldn't be able to do our jobs without you. And I wish you the best of luck, and we're going to miss you dearly. And I just want to take a moment to thank you for your service. And Judge Gould, if you have some words to acknowledge our very, very special Bonnie Cades and Judge Bennett as well, let's do that before we get started with our calendar. Just let me say to Bonnie that I've really appreciated all your excellent efforts on behalf of the court for so many years. And I know you'll have an excellent and enjoyable retirement, although we will miss you. Bonnie, we will really miss you. It has been a pleasure working with you. And thank you so very, very much for your service. And we all know you will enjoy your very well-deserved retirement. So can we give Bonnie a hand? Of course. Thank you, Bonnie. Twenty-four plus years, that's pretty special. Now for our calendar. The first couple of cases have been submitted on the briefs and record, and they are U.S. v. Gamble, U.S. v. Vieira. So the first case up for argument is United States of America v. Bryce Tyrone Forhovich. Thank you. Good morning, and may it please the Court, Nick Wolfram on behalf of Bryce Forhovich. I'd like to reserve two minutes for rebuttal, and I'll keep track of the clock. All right. Thank you. The magistrate judge in this case committed three errors that each warrant reversal. He considered improper propensity evidence, he considered his own anecdotal experiences at sentencing, and he convicted Mr. Forhovich based on insufficient evidence. We ask this Court to vacate Mr. Forhovich's conviction on the negligence count and reverse the cutoff switch lanyard count for a new trial. Unless Your Honors prefer otherwise, I'd like to begin by discussing the improper propensity evidence, and then I'll move to the remaining issues if time permits. Specifically, I'd like to discuss the magistrate judge's admission of Government's Exhibit 3, which was body-worn camera footage purportedly showing Mr. Forhovich getting on the jet ski after being rescued by rangers and failing to attach the cutoff switch lanyard as he drove off. This entailed two errors. First, the government failed to notice this evidence as required under Rule 404B. On the 404B, as I understand it, we're on plain error review? We argue that something less than plain error review should apply because the government failed to provide notice as required under the rule. However, our position is — But there was no objection below? That's correct, Your Honor. There was no objection on 404B basis. But our position — Was there any objection at all? There was an objection to relevance of anything outside the 5 a.m. jet ski ride. There was one during opening arguments and there was one during the admission of Government's Exhibit 8, which had to do with some events prior to the accident. But that's a materially different objection. That's correct, Your Honor. But at bottom, our position is, regardless of the standard of review, this error requires reversal. And I think it's a little easier to get from point A to point B in a bench trial because we have explicit findings from the magistrate judge here adopting that propensity reasoning. And I'm looking at ER 618 to 619. If you are using a jet ski like he regularly does, I think it becomes a habit of putting that lanyard on your wrist. And he didn't. And I just see that that's probably exactly what happened when he went out on the lake to take her to the shower and then diverted to the dam. There's no question this materially affected the verdict. Well, I mean, I have to push back a little on that or a lot on that. I mean, my review of the evidence, I tend to agree with the district court where it said, where the district court said on ER 11, even assuming the body cam footage fails under 404B and that the trial court erred, defendant hasn't met his burden to show that the error affected his substantial rights. I mean, the evidence looks to me like it's pretty overwhelming, which is what the district court essentially found in affirming, right? Why isn't this evidence overwhelming? We would disagree because without the propensity evidence, looking at the record as a whole, or specifically the magistrate judge's reasoning, all that's left was conflicting evidence as to whether Mr. Virhanich had the cutoff switch lanyard on and whether it could have come off during this incident. Although he was found not credible, right? The magistrate judge discredited Mr. Virhanich's testimony, I believe, most directly as to the life jacket evidence. But again, taking out the propensity evidence, it's not clear that the magistrate judge would have discredited Mr. Virhanich's testimony on that matter. Without the cutoff switch lanyard evidence, all that's left is this conflicting testimony. And notably absent from the record is any evidence from the government showing the general efficacy of these cutoff switch lanyards, the wear on this particular cutoff switch lanyard. In fact, the only testimony we have regarding that matter is Mr. Virhanich's testimony that the Velcro had worn on that. So is it irrelevant to this that when the jet ski was recovered, the engine was running with the safety lanyard still attached? No, Your Honor. That's certainly relevant. But taking a step back and looking at the standard of review here, even if it's plain error review, an error affects the substantial rights if it's more probable than not that the error materially affected the verdict. Here, I understand Your Honor's reservations, but we have explicit reliance on the propensity evidence. Then looking to the fourth prong, it's our burden to show that there's a plausible chance of a more favorable outcome at retrial. And because of the lack of other evidence, as Your Honor recognized, there's some circumstantial evidence supporting that. But it's not sufficiency review. Without the propensity evidence, the record is fairly bare as to showing that Mr. Virhanich failed to attach the cutoff switch lanyard. That, we submit, is enough for a plausible chance of a more favorable outcome at retrial. And if Your Honors have no further questions about that, I'd like to discuss the sentencing error. The magistrate judge in this case explicitly relied on his own anecdotal experience in the State Court to reject Mr. Virhanich's evidence suggesting that, at least in Nevada State Court, when negligence causes the death of another, it does not result in custodial time. Under this Court's cases in United States v. Berber-Tinoco and United States v. Lewis, judges are not competent witnesses to factual issues and therefore may not rely on their own personal knowledge that they only know as an outside observer in proceedings. In this case, the magistrate judge explicitly relied on his own personal knowledge outside proceedings as an individual observer to reject competent evidence provided by Mr. Virhanich in support of a sentencing argument. This is akin to a defendant providing JSIN data suggesting that the average sentence for someone under the same guideline is probation and the sentencing judge saying, well, based on my experience for 30 years in federal court, defendants convicted of this crime are sentenced to custodial time. The magistrate judge was able to reject the State-Federal comparisons, but the manner in which he did it here was erroneous and requires resentencing. And if your honors have no other questions about the sentencing error, I'll move to the sufficiency. The magistrate judge and the district court incorrectly concluded that evidence as to the cutoff switch lanyard and life vests were relevant to the negligence analysis. The plain meaning of operation is concerned only with the exertion of direction or influence over the vessel itself. And that's really buttressed by the regulations here. Section 3.8B sets forth specific inherently unsafe operations. But it talks about, doesn't it, by failing to exercise that degree of care which a reasonable person under like circumstances would demonstrate in order to prevent the endangering of life, limb, or property, et cetera. I mean, that's pretty broad. Yes, Your Honor, but as we argue in our briefing, that broad negligence provision is informed by the specific examples preceding that. And when you look to 3.9, the succeeding provision that includes the life vests and cutoff switch lanyard provisions, that sets forth conditions to operating. So things one must do before operating the jet ski. Whereas 3.8, which contains a negligence provision, sets forth actual operations that the NPS had deemed inherently unsafe. Well, the government argues that other subsections are similar to the one that you claim means only one thing. What's your response to that? I believe Your Honor is referring to the subsections that have to do with passengers riding in particular areas.  Again, I'd argue that that's, and I see my time is about to run. Would you mind if I briefly answer? No, please finish your answer. Thank you, Your Honor. I'd argue that that goes to the actual operation, the exertion of power over the vessel while someone is in that area. Something that is more likely to make an accident happen. Unless Your Honors have any other questions, I'll reserve the rest of my time for rebuttal. Thank you. All right. Good morning, Your Honors, and may it please the Court. Lauren Abana is on behalf of the United States. Your Honors, this Court should affirm the lower court's decision because the evidence was properly admitted at trial, the evidence presented at trial was sufficient to sustain a conviction, and lastly, the custodial sentence that was imposed was both reasonable and lawful. Now, first, I would like to address arguments that was made concerning the evidence that was submitted as far as the body-worn camera. Defendant attempts to argue that the body-worn camera was submitted as 404B evidence, but as Your Honors correctly noted, defendant at the time of trial failed to make any objection to that evidence being admitted. In fact, when counsel was asked by the magistrate judge at the time the evidence was submitted, counsel indicated there was no objection to that evidence being admitted. And because of that, we then review this under the plain error standard. And in viewing that, the government believes that the government submitted that evidence as inextricably intertwined evidence in allowing the prosecution to tell the story, a coherent story, of the charged conduct. How long after the decedent fell or was expelled from the boat was this footage? Your Honor, I believe it was in fact several hours after the incident had occurred. It happened after the defendant was rescued by a lay witness and the ranger responded to the scene. And I do recognize, Your Honor, that while it happened or occurred several hours after the incident, it still goes to show the overall story and the overall charged conduct in which the government was presenting at trial. And alternatively, Your Honor, that alternatively, even if this body-worn camera was not presented at trial, there is still overwhelming evidence, as Your Honor noted previously, to support the conviction that Mr. Verhoenich was not wearing the lanyard at the time. The magistrate had also considered not just the body-worn camera, but considered the testimony from Mr. Estoy who responded to Mr. Verhoenich when he was in peril and noticed that the jet ski was still operational and that Mr. Verhoenich was not wearing a lanyard. The magistrate also considered testimony from Ranger Dentler who testified that the jet ski was also operational and running when he responded to the scene and that there was no malfunction on the jet ski, indicating that the lanyard was still intact. And given that, Your Honor, the defendant fails to meet his burden in that it warrants reversal that it would have had substantially affected his rights at trial. And, Your Honors, I'd like to turn to the issue of sentencing. Now, the defendant argues that the magistrate, at the time of sentencing, improperly included his own antecedent experience at the time of sentencing. In fact, he hones in simply on one sentence, that the magistrate said that he had over 30 years of experience at State and that ordinarily these types of cases usually result in a custodial sentence. But regardless of that, Your Honor, the trial judge, the magistrate in this matter, went through a lengthy legal analysis of the 3553 factors in which he considered and then imposed a sentence. He considered the nature and circumstance of the offense. He considered the defendant's limited criminal history at the time, which included a recent arrest for methamphetamine in a case that was still pending. And notably, he also considered the fact that the defendant did not seem remorseful. And that part of the transcript is actually outlined in the government's brief on page 26. The magistrate found that the defendant was more concerned with his mother's keepsake rather than the death of Ms. Hatcher at the time. And in considering all of those factors, the magistrate imposed a custodial sentence that was sufficient but not greater than necessary. And lastly, Your Honors, I'd like to address the issue of the negligence charge. And that was count one of the amended complaints. Now, as Your Honor mentioned previously, there was more than sufficient enough evidence to support that charge. In fact, as the district court noted, there was an overwhelming evidence to support that charge. Now, defendant ---- Sotomayor, I think that the defense has a very tough argument on any of the sufficiency charges because now the government gets all the reasonable inferences in its favor. Yes, Your Honor. And I do believe in that regard, under the de novo standard and viewing the evidence in light of most favorable to government, I do ---- the government would succeed on that. The counsel asked the court to view the regulation in a very narrow and limited way. And that is namely viewing the statute in a operational or mechanical instance. But as Your Honor pointed out previously, the statute is more broad in that sense. And that is how the magistrate judge interpreted it. And that is how the district court interpreted it. And in fact, the magistrate, at the time of trial, considered the defendant's actions in addition to the totality of the circumstances. And that was the circumstances in which the defendant operated the vehicle. And that included things such as the weather conditions at the time, in which he considered Mr. Estoy's testimony and the defendant's testimony himself, that at the time he was operating the jet ski, it was choppy waters. And he also considered the defendant's own statements in which he stated that he had unequivocally made a wrong maneuver or a sharp turn, that there was no wave or external circumstance that resulted in himself and Ms. Hatcher falling off the jet ski. Thank you. And if Your Honors have no further questions on any of the issues? I don't think we do. Thank you. Okay. Thank you, Your Honor. Thank you.  Your Honors, just two quick points on rebuttal. First, as to the government's argument that government's Exhibit 3, which was the body-worn camera footage following the incident, was inextricably intertwined with the charge transaction, the district court rejected that argument below, and the government doesn't seem to raise that argument in its briefing on this appeal. And as Judge Bennett noted or asked about, this occurred several hours after the charge transaction, after Mr. Virhanich had fallen in the water and rescued by the kayaker and then ultimately been rescued by the Rangers. We submit that that was not inextricably intertwined and should be evaluated under Rule 404B. And second, as to the sentencing issue, the government argues that the magistrate judge set forth several reasons supporting why he imposed a custodial sentence, but I would argue that the record shows the magistrate judge's anecdotal experiences were a determinative factor in imposing a custodial sentence. How do we know that? Looking at the record at page 48, the judge's language was, in my experience in 30 years, over 30 years in state court, when negligence causes the death of another, it does lead to incarceration. There has to be something in terms of punishment. We would submit that, regardless of other considerations, the magistrate judge's considerations of his own anecdotal experiences infected the sentencing to the point where this requires a new sentencing. If Your Honors have no other questions, we'd ask for the court to vacate on Count 1 and reverse Count 3 for a new trial. Thank you. All right. Thank you very much, counsel, to both sides for your argument this morning. The matter is submitted.
judges: GOULD, NGUYEN, BENNETT